

# AMERICAN MODERN HOME INSURANCE COMPANY
## CINCINNATI, OHIO
### (A Stock Company herein called the Company)

## BLANKET MORTGAGE SECURITY POLICY

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

|  |  |
|---|---|
| Policy No. | BM-41-7057-5241 |
| Lender No. | 5241 |
| Agent No. | 047057 |

1. **Named Insured Mortgagee:**
Community South Bank
625 S. Gay Street, Ste. 450
Knoxville, TN  37902

2. **Agent/Administrator:**
Kurt Kesler & Associates, Inc.
425 El Pintado Road, Suite 140
Danville, CA 64526

3. **Policy Period:** From _____April 1, 2010_____ To _____Until Cancelled_____
(12:01 a.m. Standard Time at the Address of the Insured Property)

LIABILITY COVERAGE

4. **Limits of Insurance:**

| | |
|---|---|
| Annual Aggregate Limit | $2,000,000 |
| Limit of Liability per Property | $1,000,000 |
| Fire Damage Limit | $  50,000 per ANY ONE FIRE |
| Medical Payments Limit | $   2,500  per ANY ONE PERSON |

5. **Premium Rate:** The premium for each insured property shall be computed by applying the following rate schedule

| | | |
|---|---|---|
| Real Estate Owned Liability - Residential | $ 25.00 | Per month/per exposure |
| Real Estate Owned Liability – Commercial | $ 45.00 | Per month/per exposure |
| Vacant Land | $160.00 | Per year/per parcel or lot |

6. **Endorsement Attached to and Forming a Part of Policy At Time of Issue:**

**Commercial General Liability Coverage Form** CG 00 01 (12/04), **Common Policy Conditions** IL 00 17 (11/98), ), **Abuse or Molestation Exclusion** CG 21 46 (07/98), **Asbestos Liability Exclusions Endorsement** CGL-AL (05/94), **Communicable Disease Exclusions Endorsement** CGL-CD (05/94), **Completed Operations Hazard Endorsement** CGL-COH (06/94), **Employment Related Practices Exclusions** CG 21 47 (07/98), **Financial Endeavors Exclusion Endorsement** CGL-FE (05/94), **Independent Contractors Endorsement** CGL-IC (06/94), **Insured Premises and Operations Exclusion Endorsement** CGL-IPO (06/94), **Lead-Hazardous Properties Exclusion Endorsement** CGL-LH (05/94), **Nuclear Energy Liability Exclusion Endorsement** IL 00 21 (07/02), **Personal and Advertising Injury Liability Exclusion Endorsement** CGL-CB (06/94), **Punitive Damages Exclusioin Endorsement** CGL-PD (05/94), **Service of Suit Clause** CGL-SS (05/94), **Total Pollution Exclusion Endorsement** CG 21 49 (09/99)

Date Countersigned: _____     By:_____
                                                                    Authorized Representative

BMS 077-A (08/05)


EXHIBIT
C

COMMERCIAL
GENERAL LIABILITY

CG 21 46 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ABUSE OR MOLESTATION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:

    a. Employment;

    b. Investigation;

    c. Supervision;

    d. Reporting to the proper authorities, or failure to so report; or

    e. Retention;

    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

CG 21 46 07 98

© Insurance Services Office, Inc., 1997



## COMMERCIAL GENERAL LIABILITY/REO LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## ASBESTOS LIABILITY EXCLUSION ENDORSEMENT

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal injury", or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

2. The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

a. Any supervision. instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other Terms and Conditions of this Policy remain unchanged.

| COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY | | |
|---|---|---|
| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |

Countersigned at _____

This _____ day of _____ 20 _____

AUTHORIZED REPRESENTATIVE

CGL-AL (05/94)

COMMERCIAL GENERAL
LIABILITY

CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption

of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

### a. Any Insured

To any insured, except "volunteer workers".

### b. Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

### c. Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

### d. Workers Compensation And Similar Laws

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

### e. Athletics Activities

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

### f. Products-Completed Operations Hazard

Included within the "products-completed operations hazard".

### g. Coverage A Exclusions

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

#### a. Primary Insurance

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

#### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc.

IL 00 17 11 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98**

© Insurance Services Office, Inc., 1998



COMMERCIAL GENERAL LIABILITY/REO LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## COMMUNICABLE DISEASE EXCLUSION ENDORSEMENT

This insurance does not apply to:

1. Either "Bodily Injury" or "Property Damage- arising out of the giving of, spreading of or exposure to a communicable disease, whether by sexual conduct or otherwise.

All other Terms and Conditions of this Policy remain unchanged.

| COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY | | |
|---|---|---|
| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |
| Countersigned at _____ <br><br> This _____ day of _____ 20 _____ <br><br> _____ <br> AUTHORIZED REPRESENTATIVE | | |

CGL-CD (05/94)



COMMERCIAL GENERAL LIABILITY/REO LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## COMPLETED OPERATIONS HAZARD ENDORSEMENT

This insurance excludes "Bodily Injury" or "Property Damage" falling within the "completed operations hazard" or the " products hazard."

CGL-COH (06/94)

COMMERCIAL
GENERAL LIABILITY

CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.


# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:


**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following exclusion is added to Paragraph 2.,Exclusions of Section I –Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2.,Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 07 98

© Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY/REO LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

# FINANCIAL ENDEAVORS EXCLUSION ENDORSEMENT

This insurance does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of:

1. operations over which you exercise control in a fiduciary capacity as trustee, guardian, executor, administrator. custodian, escrow agent or similar capacity;

2. damage to real or personal property of others in your safekeeping, care, custody or control;

3. the use or misuse by your borrowers of funds loaned by you to such borrowers;

4. the ownership, maintenance or use of any building In which you hold a security Interest because of loans made in connection with the construction thereof;

5. any negligent act, error or omission in the performance of professional services for others by or on your behalf, including but not limited to:

   a. administering estates or trusts or managing real or personal property of others;

   b. acting as a mortgagee, mortgage servicing agent or fiduciary with regard to deeds of trust or mortgages;

   c. the rendering or financial, economic or investment advice or advisory or management services;

   d. compliance or failure to comply with notice to stop payment in connection with any check, note or draft, or refusal to pay or to certify or give notice of dishonor of such check note or draft;

   e. electronic date processing;

   f. acting as an escrow company or escrow agent;

   g. acting as an insurance agent or broker;

   h. acting as a real estate agent or broker; or

   i. failure to comply with Section 130, Civil Liberty, or Title I (Truth In lending Act) of the Consumer Protection Act (Public Law 90-321; 82·stat 146 et seq) or any subsequent laws.

| COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY | | |
|---|---|---|
| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |
| Countersigned at _____<br><br>This _____ day of _____ 20 _____ | | |
| | | AUTHORIZED REPRESENTATIVE |

CGL-FE (05/94)



COMMERCIAL GENERAL LIABILITY/REO LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## INDEPENDENT CONTRACTORS ENDORSEMENT

This insurance excludes "Bodily Injury" or "Property Damage" arising out of structural alterations which involve changing the size of or moving buildings of other structures, new constructions or demolition operations performed by or on behalf of the named insured by independent contractors.

CGL-IC (06/94)



COMMERCIAL GENERAL LIABILITY/REO LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## INSURED PREMISES AND OPERATIONS ENDORSEMENT

This insurance covers only "Bodily Injury" or "Property Damage" that arises out of the ownership, maintenance, or the use of the "insured premises" and all operations necessary of incidental thereto. "Insured Premises" means:

(1). The premises designated in the declarations;

(2). Premises alienated by the named insured (other than premises constructed for sale by the named insured), if possession has been relinquished to others, and

(3). Premises as to which the named insured acquires ownership or control and reports his intention to insure such premises under this policy and no other within 30 days after such acquisition; and includes the ways immediately adjoining such premises on land.

CGL-IPO (06/94)



COMMERCIAL GENERAL LIABILITY/REO LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## LEAD-HAZARDOUS PROPERTIES EXCLUSION ENDORSEMENT

The insurance does not apply to any loss, cost or expense arising out of, resulting from, caused or contributed to by lead from paint or water, including dust, provided that such damages result from or are contributed to by the hazardous properties of lead.  This includes, but is not limited to, any costs for abatement, mitigation, removal or disposal of paint or other items containing lead.

This exclusion also includes, but is not limited to:

1. Any supervision, instructions, recommendations, request, warnings or advice given or which should have been given in connection with the above; and

2. Any obligation to share damages with or repay someone else who must pay damages.

All other Terms and Conditions of this Policy remain unchanged.

---

**COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY**

| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |
|---|---|---|
| | | |

Countersigned at _____

This _____ day of _____ 20 _____

_____
AUTHORIZED REPRESENTATIVE

CGL-LH (05/94)

IL 00 21 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
# (BROAD FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed there from;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the

Pg 1 of 2

planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 00 21 07 02

© ISO Properties, Inc., 2001



## COMMERCIAL GENERAL LIABILITY/REO LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

# COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY EXCLUSION ENDORSEMENT

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY is hereby deleted from this policy.

CGL-CB (06/94)



## COMMERCIAL GENERAL LIABILITY/REO LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

It is agreed that the following exclusion is added to the Policy:

## PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

It is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages. If a suit shall have been brought against the Insured for claim falling within the coverage provided under the Policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such an action. The Company shall not have an obligation to pay for any cost, interest, or damages attributable to punitive or exemplary damages.

All other Terms and Conditions of this Policy remain unchanged.

| COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY | | |
|---|---|---|
| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |

Countersigned at _____

This _____ day of _____ 20 _____

_____
AUTHORIZED REPRESENTATIVE

CGL-PD (05/94)



## COMMERCIAL GENERAL LIABILITY/REO LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

It is agreed that the following exclusion is added to the Policy:

## SERVICE OF SUIT

Pursuant to any statue of any state, territory of district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other office specified for that purpose in the Statute, or his successor or successors in office, as their true and lawful attorney upon whom may be serviced any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above named as the person to whom the said officer is authorized to mail process or a true copy thereof.

It is further agreed that service of process in such suit may be made upon the President, or his nominee, of the Company at 7000 Midland Boulevard, Amelia, OH 45102, and that in any suit instituted against anyone of then upon this Policy, the Company will abide by the final decision of such Court or to any Appellate Court in the event of an appeal.

It is agreed that in any state requiring a standard form of policy, insurance hereunder on values or properties in such state shall attach and cover in accordance with the terms and conditions of such standard form.

All other Terms and Conditions of this Policy remain unchanged.

| COMPLETE ONLY WHEN THIS ENDORSEMENT IS NOT ISSUED WITH THE POLICY | | |
|---|---|---|
| POLICY NO. | NAMED INSURED | EFFECTIVE DATE |
| | | |

Countersigned at _____

This _____ day of _____ 20 _____

_____
AUTHORIZED REPRESENTATIVE

CGL-SS (05/94)

COMMERCIAL
GENERAL LIABILITY

CG 21 49 09 99

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. , Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

CG 21 49 09 99

© **Insurance Services Office, Inc., 1998**



## AMERICAN MODERN HOME INSURANCE COMPANY
### CINCINNATI, OHIO
#### (A Stock Company herein called the Company)

## BLANKET MORTGAGE SECURITY POLICY

### DECLARATIONS

**Policy No.** BM-41-7057-5241
**Lender No.** 5241
**Agent No.** 047057

1. **Named Insured Mortgagee:**
   Community South Bank
   625 S. Gay Street, Ste. 450
   Knoxville, TN 37902

2. **Agent/Administrator:**
   Kurt Kesler & Associates Ins Services, Inc.
   425 El Pintado Road, Ste 140
   Danville, CA 94526

3. **Policy Period:** From _____April 1, 2010_____ To_____Until Cancelled_____
   (12:01 a.m. Standard Time at the Address of The Insured Property)

4. **Property Insured:** Coverage applies only to eligible real properties (Buildings) upon which you have requested we provide coverage, for which you have paid a premium and in which you have an insurable interest as mortgagee, or as the servicing agent by written agreement. This insurance does not cover land.

5. **Coverages Provided:** All coverages, terms and conditions for residential property are as set forth in this Blanket Mortgage Security Policy and the attached Dwelling Property 3A Amended Form.  All coverages, terms and conditions for commercial property are as set forth in this Blanket Mortgage Security Policy and the attached General Property 11A Amended Form.  All coverages, terms and conditions for manufactured homes are set forth in this Blanket Mortgage Security Policy.

6. **Maximum Amount of Insurance:** The Maximum Amount of Insurance shall be the lesser of the amount shown on your request for insurance reflected on the monthly reports described in General Provision M. of this policy, or $ 5,000,000.00 for residential property and $5,000,000.00 for commercial property.

7. **Premium Rate:** The premium for each insured property shall be computed by applying the following rate per hundred per year to the Amount of Insurance applicable to each insured property.

   | | |
   |---|---|
   | Residential Property – Occupied or Vacant............................... | $1.00 per $100 |
   | Residential "Real Estate Owned" Property................................. | $1 00 per $100 |
   | Commercial Property – Occupied............................................. | $1.50 per $100 |
   | Commercial Property – Vacant................................................. | $3.00 per $100 |
   | Commercial "Real Estate Owned" Property – Vacant.................. | $3.00 per $100 |

8. **Endorsements Attached to and Forming a Part of Policy at Time of Issue:**

   | | |
   |---|---|
   | BMS 01 (Rev. 12/01) | BMS MH (12/01) |
   | DP-3A (9/90) | BMS SV (Rev. 5/03) |
   | GP-11A (9/90) | BMS TR (12/07) |
   | BMS 06 (09/90) | BMS 077-A (08/05) |
   | BMS 90 (05/03) | |

   Date Countersigned:_____  By:_____
   Authorized Representative

BMS 077 (Rev. 12/01)

# BLANKET MORTGAGE SECURITY POLICY
## INSURING AGREEMENT

We will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy. Coverage shall apply to all residential and commercial property for which a specific request for coverage is received from you in accordance with procedures herein defined.

### DEFINITIONS

Throughout this Policy:

A.   "You" and "your" refer to the financial institution shown in item 1. of the Policy Declarations as the Named Insured Mortgagee.

B.   "We", "us" and "our" refer to the Company providing this insurance.

C.   "Policy" shall include the Blanket Mortgage Security Policy and all coverage forms and endorsements attached.

### GENERAL PROVISIONS

A.   **Term:** Coverage shall apply to each insured property from the effective date requested by you upon payment of premium. If the property afforded insurance by this Policy is also covered by other insurance terminating at noon on the inception date of our coverage, insurance under this Policy shall not become effective until such other insurance has terminated

B.   **Property Insured:** Coverage applies only to eligible real properties (Buildings) upon which you have requested we provide coverage, for which you have paid a premium and in which you have an insurable interest as mortgagee, or as the servicing agent by written agreement.

C.   **Coverage Provided:** This Policy insures against direct physical loss or damage to insured property. All coverages, terms and conditions for residential property are as set forth in this Blanket Mortgage Security Policy and the attached Dwelling Property 3A Amended Form. All coverages, terms and conditions for commercial property are as set forth in this Blanket Mortgage Security Policy and the attached General Property 11 A Amended Form. All coverages, terms and conditions for manufactured homes are set forth in this Blanket Mortgage Security Policy and the attached Manufactured Home Amended Form.

D.   **Limits of Recovery:** Our liability shall not exceed the least of the following after application of the deductible stated in this Policy:

   1.   The amount stated on the policy declarations for each location of mortgaged residential, mortgaged commercial property and mortgaged homogeneous mobile home portfolio property insured by this policy.

   2.   The amount of insurance specifically requested in your application for coverage under this Policy.

   3.   The settlement options stated in Dwelling Property 3A Amended Form applicable to residential property, General Property 11A Amended Form applicable to commercial property, Manufactured Home Amended Form applicable to manufactured homes and attached to this Policy.

E.   **Deductible:** For each loss covered under this Policy, we shall be liable for loss only in excess of the appropriate deductible specified below which shall not be recoverable under this Policy.

   1.   Residential Property:
        A deductible of $100 shall apply to each covered peril or occurrence, except for the peril of Vandalism and Malicious Mischief for which a deductible of $500 shall apply.

   2.   Commercial Property:
        A deductible of $500 shall apply to each covered peril or occurrence, except for the peril of Vandalism and Malicious Mischief for which a deductible of $1,000 shall apply.

3.    Manufactured Homes: }

A deductible of $250 shall apply to each covered peril and occurrence.

F.    **Other Insurance:** THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Policy had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

G.    **Loss Payable:** Loss, if any, shall be made payable to you as your interest appears. You hereby direct that any benefits payable in excess of your interest shall be paid to the mortgagor.

H.    **Salvage and Recoveries:** When, in connection with any loss covered by this Policy, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be refigured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the amount of loss was originally determined. Any amounts thus found to be due any party shall be promptly paid.

I.    **Inspection and Audit:** We shall be permitted at all reasonable times to inspect the insured property and to examine you and/or the mortgagor's books and records at any time during the currency of this Policy. Within one year after final settlement of any claim we shall be permitted at all reasonable times to examine you and/or the mortgagor's books and records so far as the books and records relate to any payments made because of losses happening during the term of this Policy. We waive no rights and undertake no responsibility by reason of such inspection or examination or the omission thereof.

We shall also be permitted at all reasonable times to audit your records to verify the number of existing loans for which renewal policies have not been received.

J.    **Reinstatement:** A loss to the property reduces the Limits of Recovery by the amount of the loss. Upon repair or replacement of the property, the Limits of Recovery will return to their original amount.

K.    **Request for Coverage:** When you desire coverage on any real property in which you have an insurable interest, you will request insurance by providing us with the following information: loan number, name and address of mortgagor, address of property to be insured, class of property, effective date and amount of insurance requested. Coverage shall automatically become effective upon receipt of request for coverage and payment of premium and shall remain in force until terminated by either you or us.

L.    **Cancellation:** You may cancel coverage on any individual location by notifying us of the desired effective date of cancellation not prior to the effective date of mortgagor provided insurance which meets the requirements of your loan agreement, but no more than 120 days prior to the date of notification to us, without approval of the company.

You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect, but no more than 120 days prior to the date of notification to us, without the approval of the company.

We may cancel this Policy or coverage on any individual location by giving you at least 30 days advance written notice of the date cancellation is to take effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice.

Cancellation shall be processed immediately and any return premiums shall be reflected in the next monthly report and premium billing.

M.    **Reports and Premium Billings:** Within 10 days of the last day of each month, you will provide a complete listing of all properties upon which coverage is provided showing loan number, name and address of mortgagor, address of insured property, class of property, coverage effective date, amount of insurance requested, cancellation date (if applicable). If you are required to calculate premium, payment of total net premium is due and payable with this report.

In Witness Whereof, the Company has caused this Policy to be executed and attested by its President and Secretary.

               President & CEO                          Secretary

# DWELLING PROPERTY 3A
## AMENDED FORM (9/90)

## AGREEMENT

We will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy.

## DEFINITIONS

Throughout this Policy, "you" and "your" refer to the Named Insured Mortgagee shown in the Declarations. "We, "us" and "our" refer to the Company providing this insurance.

## COVERAGES

This insurance applies to the requested location. This insurance does not cover land.

COVERAGE A - DWELLING

We cover:

a)   the dwelling on the requested location, used principally for dwelling purposes;

b)   structures attached to the dwelling;

c)   materials and supplies on or adjacent to the requested location for use in the construction, alteration or repair of the dwelling or Other Structures on this location; and

d)   building equipment and outdoor equipment used for the service of and located on the requested location.

COVERAGE B - OTHER STRUCTURES

We cover Other Structures on the requested location, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line or similar connection are considered to be Other Structures. You may use up to 10% of the Coverage A Limit of Recovery for loss by a Peril Insured Against to Other Structures described in this Coverage B. Payment under this coverage reduces the Coverage A Limit of Recovery.

We do not cover structures:

a)   used in whole or in part for commercial, manufacturing or farming purposes; or

b)   rented to or held for rental for any person not a tenant of the dwelling, unless used solely as a private garage; or

c)   such as fences, satellite dishes, antennas, or radio and television towers separated from the dwelling.

DP-3A (9/90)                                   1 of 8

OTHER COVERAGES

1.    Debris Removal - We will pay the reasonable expenses incurred for the removal of debris from a property loss covered by this Policy. Payment under this coverage reduces the Limit of Recovery applying to the damaged property.

2.    Reasonable Repairs - We will pay the reasonable cost incurred for necessary repairs made solely to protect the property covered by this Policy from further damage if there is coverage for the peril causing the loss. Payment under this coverage reduces the Limit of Recovery that applies to the property being repaired.

## PERILS INSURED AGAINST

COVERAGE A - DWELLING & COVERAGE B - OTHER STRUCTURES

We insure for risk of direct physical loss to the property described in Coverages A and B except:

1.    losses excluded under GENERAL EXCLUSIONS;

2.    freezing of a plumbing, heating, air conditioning system, automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within such system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed unless reasonable care has been taken to:

    a)    maintain heat in the building, or

    b)    shut off the water supply and drain the system and appliances of water;

3.    freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to Other Structures;

4.    theft of any property which is not actually part of any dwelling or Other Structure covered;

5.    theft in or to a dwelling or Other Structure under construction;

6.    wind, hail, ice, snow or sleet to outdoor radio and television antennas and aerials including their lead in wiring, masts or towers;

7.    continuous or repeated seepage or leakage of water or steam over a period of time from within a plumbing, heating or air conditioning system or from within a household appliance;

8.    a)    wear and tear, marring, deterioration;

    b)    inherent vice, latent defect, mechanical breakdown;

    c)    smog, rust or corrosion, mold, wet or dry rot;

    d)    smoke from agricultural smudging or industrial operations;

    e)    discharge, dispersal, seepage, migration, release or escape of pollutants.

DP-3A (9/90)                                   2 of 8

Pollutants means solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

f)   settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings; or

g)   birds, vermin, rodents, insects or domestic animals.

If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

9.   Vandalism and malicious mischief if you have failed to secure the property and conduct periodic inspections of the interior and exterior.

Under items 2 through 9, any ensuing loss not excluded is covered.

## GENERAL EXCLUSIONS

A.   We do not cover loss resulting directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:

1)   **Ordinance or Law,** meaning the enforcement of any ordinance, regulation or law regulating the construction, repair, demolition, occupancy, sale or relocation of the dwelling or Other Structure unless specifically provided under this Policy.

2)   **Earth Movement,** including but not limited to earthquake, land shock waves or tremors before, during or after a volcanic eruption, volcanic ash, landslide, rockslide, mine subsidence, mud flow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire or explosion.

3)   **Water,** meaning:

a)   flood, surface water, waves, tidal wave or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;

b)   water which backs up through sewers or drains or which overflows from a sump; or

c)   water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a dwelling or Other Structure, or sidewalk, driveway, foundation, swimming pool or Other Structure. We do cover direct loss that follows caused by fire or explosion.

4)   **Power Interruption,** meaning the interruption of power or other utility service if the interruption takes place away from the requested location, we will pay only for loss caused by the ensuing peril.

5)   **Neglect,** meaning neglect to use all reasonable means to save and preserve property at and after

the time of a loss, or when property is endangered by a Peril Insured Against.

6) **War,** including undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

7) **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of the Conditions.

8) **Intentional Act, meaning** an action by or at the direction of you or any borrower committed with the intent to cause a loss or damage. This exclusion applies even if the person committing the act is insane, intoxicated or otherwise impaired if a person without that impairment would have committed such an act with the intent to cause loss or damage.

B. We do not insure for loss to property caused by any of the following. However, any ensuing loss to property not excluded or excepted in this policy is covered.

1) **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph A. above to produce the loss;

2) **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body.

3) **Faulty, inadequate or defective:**

   a) planning, zoning, development, surveying, siting;

   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   c) materials used in repair, construction, renovation or remodeling; or

   d) maintenance;

   of part or all of any property whether on or off the property covered.

## CONDITIONS

1. **Policy Period.** This Policy applies only to loss which occurs while the coverage is in effect.

2. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a) for an amount greater than your and the mortgagor's interest in the property covered; or

   b) for more than the Limit of Recovery that applies.

3. **Concealment or Fraud.** This entire Policy is void if you or the mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted

fraudulently or make false statements relating to any aspect of this insurance, whether before or after a loss. Such acts or act by the mortgagor will bar recovery by any person except as provided in this Policy with respect to your interest.

4. **Your and the Mortgagor's Duties After Loss.** In case of a loss to which this insurance may apply, you and the mortgagor shall see that the following duties are performed:

    a)    give us immediate written notice;

    b)    protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep an accurate record of repair expenditures. If you or the mortgagor fail to do so, we will not pay for any further damage. We will not reimburse the costs of repairs unless records and receipts are provided;

    c)    make a list of all damaged or destroyed property showing in detail quantities, costs, actual cash value, amount of loss claimed and any other information we may require. Attach all bills, receipts and related documents that substantiate the figures in the list;

    d)    send to us within 60 days after loss the above list and a proof of loss signed and sworn to by you and the mortgagor, including:

        1)    the time and cause of loss;

        2)    the interest of you, the mortgagor and all others in the property;

        3)    all encumbrances on the property;

        4)    other insurance which may cover the loss;

        5)    changes in title, use occupancy or possession of the property; and

        6)    if required, any plans and specifications of the damaged buildings.

    e)    exhibit the damaged property to us or our representative as often as may be required;

    f)    as often as we may require, submit to examinations under oath by any person named by us and sign the transcript of the examinations;

    g)    produce for examination, with permission to copy, all records and documents that we may require;

    h)    in the event of a loss by theft, vandalism or malicious mischief, report the occurrence to the police immediately.

5. **Loss Settlement.** Covered property losses are settled as follows:

    a)    Other Structures that are not buildings at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;

    b)    Roofs (except for fire peril), carpeting, domestic appliances, awnings, outdoor equipment, whether or not attached to buildings, and outdoor antennas, at actual cash value at the time of loss but not exceeding the amount necessary to repair or replace;

DP-3A (9/90)                                5 of 8

   c)    Buildings under Coverage A or B:

      1)    at repair or replacement cost without deduction for depreciation, but not exceeding the smaller of the following amounts:

         a.    the repair or replacement cost of that part of the building damaged using commonly used building materials to place the property in a habitable condition for use on the same premises; or

         b.    the amount actually and necessarily spent to repair or replace the damaged building.

      2)    If you decide not to repair or replace the damaged property, at our option, we may make settlement on an actual cash value basis. You may make claim within 180 days after the loss for any additional payment on a repair or replacement cost basis.

We may at our option replace the property with property of similar kind, quality and value. If as the result of your loss we pay in cash or by replacement an amount equal to the actual cash value of the property before the loss, at our option, we have the right to take legal title to the property.

6.    **Loss to a Pair, Set, Series of Objects or Interior or Exterior Panels.** In case of loss to a part of a pair, set, series of objects, pieces or panels, either interior or exterior, we may, at our option:

   a)    repair or replace any part to restore the property to its actual cash value before the loss; or

   b)    pay the difference between the actual cash value of the property before and after the loss; or

   c)    pay the reasonable cost of providing a substitute to match the remainder of the property as closely as possible.

We cannot guarantee the availability of parts or of replacements. We will not be obligated to repair or replace the entire pair, set or series of objects, piece or panel when a part is lost or damaged.

7.    **Glass Replacement.** Covered loss to glass shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8.    **Appraisal.** If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. The appraisers shall then set the amount of the loss. If the appraiser submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

9.    **Subrogation.** You or the mortgagor may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, you and the mortgagor shall sign and deliver all related papers and cooperate with us in any reasonable manner.

10.    **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

11. **Loss Payment.** We will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor. Payment for loss will be made within 60 days after we receive a proper proof of loss and

   a)   we reach an agreement with you; or

   b)   there is an entry of final judgment; or

   c)   there is a filing of an appraisal award with us.

12. **Abandonment of Property.** We need not accept any property abandoned by you or the mortgagor.

13. **No Benefit to Bailee.** Regardless of any other provision of this policy, we will not honor an assignment nor extend coverage to a bailee. A bailee is a person or entity to whom you or the mortgagor have given possession of insured property.

14. **Cancellation.**

   a)   You may cancel this Policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. The date of cancellation may be no more than 120 days prior to the date of notification to us, without the approval of the company.

   b)   We may cancel this Policy by giving you 30 days notice in writing of the date cancellation takes effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

   c)   When this Policy is canceled, the premium paid for coverages beyond the date of cancellation will be refunded. The return premium will be pro rata.

   d)   If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

15. **Non-Renewal.** We may elect not to renew this Policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 10 days before the expiration date of this Policy. Proof of mailing shall be sufficient proof of notice. Our failure to send such a notice within the time prescribed obligates us to renew coverages if you pay the premium before the expiration date.

16. **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this Policy without additional premium within 60 days prior to or during the Policy period, the broadened coverage will immediately apply to this Policy.

17. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this Policy must be in writing by us to be valid.

18. **Assignment.** Assignment of this Policy shall not be valid unless we give our written consent.

19. **Your Interest.**

   a)   Your interest will not be impaired by any act or neglect of the mortgagor, provided you:

1)      notify us of any change in occupancy, ownership, or substantial change in risk as soon as you become aware of such change; and

2)      pay any premium when due under this Policy.

b)      If we pay you for any loss and do not pay the mortgagor,

1)      we are subrogated to all of your rights granted under the mortgage on the property and may require a partial assignment of the mortgage to the extent of payment made; or

2)      at our option, we may pay you the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the debt.

Subrogation will not impair your right to recover the full amount of your claim.

20.      **Nuclear Hazard Clause.**

a)      "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b)      Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c)      This Policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

21.      **Other Insurance.** THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Policy had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

# GENERAL PROPERTY AMENDED FORM

## AGREEMENT

We will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy.

## DEFINITIONS

Throughout this Policy, "you" and "your" refer to the Named Insured Mortgagee shown in the Declarations. "We", "us" and "our" refer to the Company providing this insurance.

## SECTION I - PROPERTY COVERED

The insurance under this Policy covers "Building(s)" in accordance with the following description(s) of coverage. This insurance does not cover land.

Coverage A - Building(s): Building(s) or structure(s) shall include attached additions and extensions; fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building; yard fixtures; personal property of the mortgagor used for the maintenance or service of the described building(s), including fire extinguishing apparatus, outdoor furniture, floor coverings and appliances for refrigerating, ventilating, cooking, dishwashing and laundering (but not including other personal property in apartments or rooms furnished by the mortgagor as landlord); all while as the described location(s).

Debris Removal: This insurance covers expense incurred in the removal of debris of the property covered, which may be occasioned by loss caused by any of the perils insured against in this Policy.

The total liability under this Policy for both loss to property and debris removal expense shall not exceed the amount of insurance applying under this Policy to the property covered.

## SECTION II - PROPERTY NOT COVERED

In addition to the Ineligible Properties appearing in the Declarations of the Blanket Mortgage Security Policy, this Policy does not cover:
1.  Outdoor signs, whether or not attached to a building or structure;
2.  Outdoor trees, shrubs and plants;
3.  Outdoor swimming pools; fences; piers, wharves and docks, beach or diving platforms or appurte-nances; retaining walls not constituting a part of buildings; walks, roadways and other paved surfaces.

## SECTION III - DEDUCTIBLE CLAUSE

A deductible of $500 shall apply to each peril or occurrence except for the peril of Vandalism and Malicious Mischief for which a deductible of $1,000 shall apply to each occurrence.

## SECTION IV - PERILS INSURED AGAINST

This Policy insures against all direct loss caused by:
1.  **Fire or Lightning.**
2.  **Removal,** meaning loss to the property covered hereunder while being removed or removed from the premises endangered by the perils insured against. The insurance is in effect for only 5 days at each proper place to which such property shall necessarily be removed for preservation from the perils insured against. The amount of insurance provided shall be the same proportion as the property

removed bears to all property covered by this insurance.

3.   **Windstorm or Hail,** excluding loss caused directly or indirectly by frost or cold weather, or ice (other than hail), snow or sleet, whether driven by wind or not.
   a)   This Company shall not be liable for loss to the interior of the building(s) or the property covered therein caused:
      (1)   by rain, snow, sand or dust, whether driven by wind or not unless the building(s) covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the building(s) or the property covered therein as may be caused by rain, snow, sand or dust entering the building(s) through openings in the roof or walls made by direct action of wind or hail; or
      (2)   by water from sprinkler equipment or from other piping, unless such equipment or piping is damaged as a direct result of wind or hail.
   b)   This Company shall not be liable for Windstorm or Hail damage to the following property:
      (1)   Windmills, wind pumps or their towers;
      (2)   Crop silos;
      (3)   Metal smokestacks; or
      (4)   When outside of buildings,
         a.   Awnings of fabric or slat construction, canopies of fabric or slat construction, including their supports,
         b.   Radio or television antennas, including their lead-in wiring, masts or towers.

4.   **Smoke,** meaning sudden and accidental damage from smoke, other than smoke from agricultural smudging or industrial operations.

5.   **Explosion,** including direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom.
   a)   This Company shall not be liable for loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the mortgagor.
   b)   The following are not explosions within the intent or meaning of these provisions:
      (1)   Shock waves caused by aircraft, generally known as "sonic boom",
      (2)   Electric arcing,
      (3)   Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown,
      (4)   Water hammer,
      (5)   Rupture or bursting of water pipes,
      (6)   Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water,
      (7)   Rupture, bursting or operation of pressure relief devices.

6.   **Riot, Riot Attending A Strike or Civil Commotion,** including direct loss by acts of striking employees of the owner or tenant(s) of the described building(s) while occupied by said striking employees and shall also include direct loss from pillage and looting occurring during and at the immediate place of a riot, riot attending a strike or civil commotion.

7.   **Aircraft or Vehicles,** meaning only direct loss resulting from actual physical contact of an aircraft or a vehicle with the property covered or with the building(s) containing the property covered, except that loss by aircraft includes direct loss by objects falling therefrom. This Company shall not be liable for loss:
   a)   by any vehicle owned or operated by a mortgagor or by any tenant of the described premises;
   b)   by any vehicle to fences, driveways, walks; or
   c)   to any aircraft or vehicle including its contents other than stocks of aircraft or vehicles in process of manufacture or for sale.

8.   **Vandalism or Malicious Mischief,** meaning only the willful and malicious damage to or destruction of the property covered. This Company shall not be liable for loss:

a) to glass (other than glass building blocks) constituting part of a building, structure or an outside sign;
b) by pilferage, theft, burglary or larceny, except this Company shall be liable for willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s);
c) if the described building(s) had been vacant beyond a period of 30 consecutive days immediately preceding the loss, unless the Company has been notified of such vacancy, the appropriate premium has been paid therefor and you have secured the property and conducted periodic inspections of the interior and exterior. ("Vacant" means containing no contents or only minimal contents pertaining to operations or activities customary to occupancy of the building).

## SECTION V - EXCLUSIONS

1. **Electrical Apparatus:** This Company shall not be liable for any loss resulting from any electrical injury or disturbance to electrical appliances, devices, fixtures or wiring caused by electrical currents artificially generated unless fire as insured against ensues.

2. **Nuclear Clause** (Not applicable in New York): The word "fire" in this Policy or endorsements attached hereto is not intended to and does not embrace nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and loss by nuclear reaction or nuclear radiation or radioactive contamination is not intended to be and is not insured against by this Policy or said endorsements, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by "fire" and other perils insured against by this Policy or said endorsements; however, subject to the foregoing and all provisions of this Policy, direct loss by "fire" resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this Policy.

3. **Nuclear Clause** (Applicable in New York): This Policy does not cover loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether directly or indirectly resulting from an insured peril under this Policy.

4. **Nuclear Exclusion** (Not applicable in New York); (this clause applies to all perils insured against hereunder except the perils of fire and lightning, which are otherwise provided for in the Nuclear clause above): Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, is not insured against by this Policy, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by any of the perils insured against by this Policy; and nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, is not "explosion" or "smoke".

5. **Ordinance or Law,** meaning the enforcement of any ordinance, regulation or law regarding the construction, repair, demolition, occupancy, sale or relocation of the property unless specifically provided under this Policy.

6. **Power Failure:** This Company shall not be liable for loss caused directly or indirectly by the interruption of power or other utility service furnished to the described premises if the interruption takes place away from the described premises. If a peril insured against ensues on the described premises, this Company shall be liable for only its proportion of loss caused by the ensuing peril.

7. **War Risk:** War, including undeclared war, civil war, insurrection, rebellion, revolution, warlike act of a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

8. **Water,** meaning:
a) flood, surface water, waves, tidal wave or overflow of a body of water. We do not cover spray from any of these, whether or not driven by wind;
b) water which backs up through sewers or drains; or
c) water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building.
We do cover direct loss that follows caused by fire or explosion.

9.   **Earth Movement,** including but not limited to earthquake, land shock waves or tremors before, during or after a volcanic eruption, volcanic ash, landslide, rockslide, mud flow, earth sinking, rising or shifting. We do cover direct loss that follows caused by fire or explosion.

10.   **Neglect,** meaning neglect to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a Peril Insured Against.

11.   **Intentional Act,** meaning an action by or at the direction of you or any borrower committed with the intent to cause a loss or damage. This exclusion applies even if the person committing the act is insane, intoxicated or otherwise impaired if a person without that impairment would have committed such an act with the intent to cause loss or damage.

## SECTION VI - CONDITIONS

1.   **Policy Period.** This Policy applies only to loss which occurs while the coverage is in effect.

2.   **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:
     a)   for an amount greater than your and the mortgagor's interest in the property covered; or
     b)   for more than the Limit of Recovery that applies.

3.   **Concealment or Fraud.** This entire Policy is void if you or the mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted fraudulently or made false statements relating to any aspect of this insurance, whether before or after a loss. Such acts or act by the mortgagor will bar recovery by any person except as provided in this Policy with respect to your interest.

4.   **Your and the Mortgagor's Duties After Loss.** In case of a loss to which this insurance may apply, you and the mortgagor shall see that the following duties are performed:
     a)   give us immediate written notice;
     b)   protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep an accurate record of repair expenditures. If you or the mortgagor fail to do so, we will not pay for any further damage. We will not reimburse for the costs of repairs unless records and receipts are provided;
     c)   make a list of all damaged or destroyed property showing in detail quantities, costs, actual cash value, amount of loss claimed and any other information we may require. Attach all bills, receipts and related documents that substantiate the figures in the list;
     d)   send to us within 60 days after loss the above list and a proof of loss signed and sworn to by you and the mortgagor, including:
          (1)   the time and cause of loss;
          (2)   the interest of you, the mortgagor and all others in the property;
          (3)   all encumbrances on the property;
          (4)   other insurance which may cover the loss;
          (5)   changes in title, use, occupancy or possession of the property; and
          (6)   if required, any plans and specifications of the damaged buildings.
     e)   exhibit the damaged property to us or our representative as often as may be required;
     f)   as often as we may require, submit to examinations under oath by any person named by us and sign the transcript of the examinations;
     g)   produce for examination, with permission to copy, all records and documents that we may require;
     h)   in the event of a vandalism or malicious mischief loss, report the occurrence to the police immediately.

5.   Loss Settlement. Covered property losses are settled as follows:
     a)   All property except Tenant's Improvements and Betterments at actual cash value except as provided below or by endorsement.

GP-11A (9/90)                                    4 of 6

b) Tenant's Improvements and Betterments:

    (1)   If repaired or replaced at the expense of you or the mortgagor within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements and betterments limit.

    (2)   If not repaired or replaced at the expense of you or the mortgagor within a reasonable time after loss, that proportion of the original cost at the time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agreement, whether written or oral, in effect at the time of loss bears to the periods from the date such improvements or betterments were made to the expiration of the lease.

6.    **Other Insurance.** THIS INSURANCE IS EXCESS INSURANCE. If there is any other valid and collectible insurance which would attach if the insurance provided under this Policy had not been effected, this insurance shall apply only as excess insurance and in no event as contributing insurance, and then only after all other insurance has been exhausted.

7.    **Appraisal.** If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

8.    **Subrogation.** You or the mortgagor may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, you and the mortgagor shall sign and deliver all related papers and cooperate with us in any reasonable manner.

9.    **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

10.    **Loss Payment.** We will adjust any loss with you and the mortgagor. We will pay you to the extent of your interest in the property. You hereby direct that any benefits due which are in excess of your interest in the property be paid to the mortgagor. Payment for loss will be made within 60 days after we receive a proper proof of loss and

    a)   we reach an agreement with you; or

    b)   there is an entry of final judgment; or

    c)   there is a filing of an appraisal award with us.

11.    **Abandonment of Property.** We need not accept any property abandoned by you or the mortgagor.

12.    **No Benefit to Bailee.** Regardless of any other provision of this policy, we will not honor an assignment nor extend coverage to a bailee. A bailee is a person or entity to whom you or the mortgagor have given possession of insured property.

13.    **Cancellation.**

    a)   You may cancel this Policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. The date of cancellation may be no more than 120 days prior to the date of notification to us, without the approval of the company.

    b)   We may cancel this Policy by giving you 30 days notice in writing of the date cancellation takes effect, with the exception of cancellation for nonpayment of premium which shall be a minimum of 10 days advance written notice. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

    c)   When this Policy is cancelled, the premium paid for coverages beyond the date of cancellation will be refunded. The return premium will be pro rata.

    d)    If the return premiun (not refunded with the notice of cancella) or when this Policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

14. **Non-Renewal.** We may elect not to renew this Policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 10 days before the expiration date of this Policy. Proof of mailing shall be sufficient proof of notice. Our failure to send such a notice within the time prescribed obligates us to renew coverages if you pay the premium before the expiration date.

15. **Liberalization Clause.** If we adopt any revision which would broaden the coverage under this Policy without additional premium within 60 days prior to or during the Policy period, the broadened coverage will immediately apply to this Policy.

16. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this Policy must be in writing by us to be valid.

17. **Assignment.** Assignment of this Policy shall not be valid unless we give our written consent.

18. **Your Interest.**
    a)    Your interest will not be impaired by any act or neglect of the mortgagor, provided you:
        1)    notify us of any change in occupancy, ownership, or substantial change in risk as soon as you become aware of such change; and
        2)    pay any premium when due under this Policy.
    b)    If we pay you for any loss and do not pay the mortgagor,
        1)    we are subrogated to all of your rights granted under the mortgage on the property and may require a partial assignment of the mortgage to the extent of payment made; or
        2)    at our option, we may pay you the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the debt.
Subrogation will not impair your right to recover the full amount of your claim.

## SECTION VII - OTHER PROVISIONS

1. **Inspection of Property and Operations:** This Company and any person or organization making inspections on the Company's benefit shall be permitted but not obligated to inspect the mortgagor's property and operations at any time. Neither the right of this Company and any person or organization to make such inspections not the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulations.

2. **Permits and Use:** Except as otherwise provided, permission is granted:
    a)    to make additions, alterations and repairs. This Policy insofar as it covers building(s) or structure(s), is extended to cover additions, alterations and repairs, when not otherwise covered by insurance, including temporary structures constructed on site, materials, equipment and supplies therefor on or within 100 feet of the described premises; and this Policy, insofar as it covers contents, is extended to cover such additions.
    b)    for such unoccupancy as is usual or incidental to described occupancy. "Unoccupied" or "Unoccu-pancy" means containing contents pertaining to occupancy of the building while operations or other customary activities are suspended.

3. **Protective Safeguards:** It is a condition of this insurance that you and the mortgagor shall maintain so far as is within your or the mortgagor's control such protective safeguards as are set forth by endorsement hereto.

Failure to maintain such protective safeguards shall suspend this insurance, only as respects the location or situation affected, for the time of such discontinuance.



# GENERAL CHANGE ENDORSEMENT
## (To be attached to Master Policy)

This endorsement, effective __April 1, 2010__, forms a part of Master Policy No. __BM-41-7057-5241__
issued to ____Community South Bank____ by the Company.

In consideration of the basis upon which this policy has been issued it is agreed between the named insured and the Company that the following will apply to the Master Policy.

1.  Automatic Coverage will become effective on _____April 1, 2010____.

a)  Automatic Coverage: Coverage on all properties eligible for coverage under the terms and conditions of the Master Policy shall be effective concurrent with the effective date of Automatic Coverage as stated above.

b)  The Company maintains the right to audit the Mortgagee's loan files for eligible classes of collateral upon fifteen (15) days written notice by the Company.

c)  If a claim is placed under the Automatic Coverage provision, the effective date of coverage will be the date of borrower's indebtedness to the Mortgagee, the date borrower furnished insurance ceased to apply, or the effective date of the Automatic Coverage as stated in this agreement, whichever is later. However, it is expressly understood and agreed that for coverage to apply, the damage to or loss or destruction of the property must have occurred after the effective date of this endorsement.

2.  Maintenance of Records/Insurance Documentation:

The coverages afforded to the Mortgagee under this endorsement shall not apply unless the mortgagee maintains procedures to identify the status of borrower furnished insurance on eligible loans. As a further condition, the Mortgagee will take reasonable and customary steps to secure coverage to protect its interest in the event the borrower does not provide acceptable insurance or such insurance is cancelled or expires.

3.  Cancellation/Termination:

It is further agreed that this endorsement may be terminated by either party with forty-five (45) days notice in writing.

4.  This agreement is subject to all restrictions placed upon the Mortgagee by the laws of the state in which the Mortgagee is organized, and to the terms and conditions of the Master Policy.

All other terms and conditions of this policy shall remain in full force and effect.

In witness whereof, the company has caused this endorsement to be executed by a duly authorized representative.


_____
Authorized Representative


BMS 06 (9/90)



# BLANKET MORTGAGE SECURITY POLICY

## WIND, HAIL, and HURRICANE DEDUCTIBLE ENDORSEMENT

This endorsement, effective __April 1, 2010__, forms a part of Master Policy No._____BM-41-7057-5421_____
issued to _____Community South Bank_____ by the Company.

In consideration of the basis on which this policy has been issued and premiums collected, it is agreed between the named insured and the Company that the deductible provision of the Blanket Mortgage Security Policy is amended as follows:

   A deductible of 2% shall apply to each occurrence caused by the perils of wind, hail, and hurricane.

All other policy terms and conditions shall remain in full force and effect. In witness whereof, the company has caused this endorsement to be executed by a duly authorized representative.

_____
Authorized Representative

BMS 90 (05/03)



# MANUFACTURED HOME AMENDED FORM

BMS MH (12/01)

## AGREEMENT

**We** will provide the insurance described in this Policy in return for the premium and compliance with all applicable provisions of this Policy.

## DEFINITIONS

1. **"You"** and **"your"** mean the Named Insured Mortgagee shown in the Declarations.

2. **"We"**, **"us"** and **"our"** mean the company providing this insurance.

3. **"Named Insured"** when used in **SECTION I** of the policy, means **you.**

4. **"Loss"** means direct, sudden and accidental damage.

5. **"Insured premises"** means, in **SECTION I,** the dwelling on the requested location, used principally for dwelling purposes.

6. **"Motor vehicle"** means:

   (a) any motorized land conveyance of any type, regardless of whether or not it is licensed for road use or whether the motorized land conveyance is made for use on or off public roads. The terms **"motor vehicle"** shall include, but is not limited to, automobiles, motorcycles, mopeds, all-terrain vehicles, tractors, riding lawnmowers, snowmobiles and go-carts. It does not mean a golf cart while used on a golf course for golfing purposes, or lawn or garden equipment while used on the **insured premises.**

   (b) a trailer or semi-trailer made for use on or off public roads.

   (c) any vehicle while being towed or carried by one of the above **motor vehicles.**

7. "Smoke damage" means sudden, accidental smoke damage caused by other than farm smudging or industrial smoke. It does not mean gradual buildup of any oily or greasy substance or film.

8. **"Vehicle damage"** means **loss** to the property insured caused by any vehicle not owned or used by a **named insured** or mortgagor while the dwelling is not on a public right of way or in transit.

9. **"Flood"** means a general temporary condition of partial or complete covering of normally dry land areas as a result of:

   (a) the overflow of inland or tidal waters, or

   (b) the unusual and rapid buildup or runoff of surface water from any source, or

   (c) mud slides or mud flows which are caused by the buildup of water on or below the surface of the ground, or

   (d) **flood** can also mean the collapse or sinking of land along the shore of a body of water as a result of erosion or undermining caused by waves or currents of water exceeding the normal levels, which results in a **flood** as defined above.

10. **"Earth movement"** means:

    (a) earthquake;

    (b) land shock waves or tremors occurring before, during or after a volcanic eruption;

    (c) landslides;

    (d) mudflow; or

    (e) earth sinking, rising or shifting.

11. **"Aircraft"** means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

12. **"Actual Cash Value"** means the amount it would cost to repair or replace damaged property with material of like kind and quality, less deduction for physical deterioration and depreciation, including obsolescence.

## SECTION I - PROPERTY COVERAGE

For coverages **you** have selected, **we** cover the dwelling on the requested location, used principally for dwelling purposes; including the equipment, fixtures and furnishings which were a part of the dwelling when built or purchased. This includes above ground foundation supports, tie-downs, air conditioners, water pumps, skirting, steps, and oil and gas drums furnishing heating or cooking fuel for the dwelling. This also includes structures attached to the dwelling other than adjacent structures, whether or not a part of the dwelling when built or purchased.

This coverage does not apply to land, including land on which the dwelling is located.

COVERAGES PROVIDED

**We** provide the following coverages, if shown on the Declarations Page:

1.  **Homogeneous Manufactured Home Portfolio Property -** Subject to certain limitations and exclusions, **we** will pay for **loss** to a **named insured's** property except any **loss** that occurs during transit or preparation for transit of the dwelling.   This coverage does not include coverage for **loss** due to **flood** or **earth movement**.

## EXCLUSIONS

Under Dwelling coverage, **we** do not cover **loss** caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently to:

1.  **loss** resulting from defective or improper manufacture, latent defect, installation, movement, set-up or transport.

2.  **loss** due and confined to wear and tear, lack of maintenance, neglect or abusive use, mold, rotting, rust, corrosion, insects and vermin, rodents, reptiles, birds or domestic animals.

3.  **loss** due and confined to freezing or extremes of temperature, including spoilage of food, unless the result of a covered **loss**.

4.  **loss** resulting from vandalism, conversion or concealment by anyone who has legal possession of the property.

5.  **loss** resulting from gradual leakage of water from a plumbing, heating or air conditioning system, appliances or waterbeds unless the result of a covered **loss**.

6.  **loss** resulting from water damage.   Water damage means:

    (a)   water which backs up through sewers, drains, overflows from a sump or from below the surface of the ground; or

    (b)   water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

    Direct **loss** by fire, explosion or theft resulting from water damage is covered.

7.  **loss** resulting from mysterious disappearance of the insured property or if it is lost or misplaced.

8.  **loss** resulting from failure, surge or interruption of power or other utility service which occurs away from the insured premises.  But, if a covered **loss** ensures on the **insured premises**, **we** will pay only for that ensuing **loss**.

9.  **loss** resulting from an action or omission by or at the direct of any **named insured,** committed with the intent to cause a **loss** or damage.

10.   **loss** resulting from seepage or leakage of rain, sleet, ice or snow, whether or not wind-driven, unless caused by a covered peril.

11.   **loss** or any increase in the cost of any repair resulting from enforcement of an ordinance, regulation or law regulating the construction, repair, demolition, occupancy, sale or relocation of the dwelling, unless specifically provided for under this policy.  **We** do cover **loss** caused by actions of civil authorities to prevent the spread of a fire, provided the **loss** is covered under this policy.   This exclusion applies whether or not any increase in cost is necessitated as a result of damages caused by a covered peril.

12.   **loss** resulting from theft, vandalism, malicious mischief or breakage of glass is the dwelling has been vacant or unoccupied for 30 days immediately preceding the **loss.**

13.   **loss** resulting from illegal acts of any **named insured**.

14.   **loss** resulting from war, warlike acts, including insurrection, rebellion or revolution.

15.   **loss** to the insured property caused by any vehicle owned or used by any **named insured.**

16.   **loss** if the risk of **loss** is increased by any means within the control or knowledge of a **named insured.**

17.   **loss** resulting from neglect of any **named insured** to take all reasonable steps to save the preserve property at the time of and after a **loss** or when the property is endangered by a peril **we** cover.

18.   **loss** resulting from settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.

19.   **loss** resulting from nuclear action or activity of any type including **loss** caused by fire resulting from any such nuclear action or activity.

## CONDITIONS

This policy is issued in reliance upon the truth of **your** representations, and this policy includes all agreements existing between **you** and **us** or any of **our** agents.

1.    **Method of Settlement**

The liability limit shown on the Declarations Page for each kind of property insured is **our** total liability for **loss** to that kind of property, less any deductible. **Our** payment for **loss** shall not exceed the lowest of:

(a)    the actual cash value of the property just before the **loss**; or

(b)    the difference between the actual cash value just before and just after the **loss**; or

(c)    the amount necessary to repair or replace the property; or

(d)    the liability limit shown on the Declarations Page or elsewhere in the policy.

2.    **Hail**

The amount **we** will pay **you** for **loss** or damage from hail depends on the type of **loss** or damage it causes. Hail can cause structural damage, which is the actual penetration of the exterior surface or the cracking or breaking of support materials. When this type of **loss** or damage occurs, **we** will pay **you** the actual cash value of the cost of repairing or replacing the damaged portion of the property.

Hail often dents the exterior surface of a dwelling. When there is no structural damage, the utility of these structures will not be affected. The amount **we** pay for this will be the difference between the actual cash value of **your** property immediately before the **loss** and its actual cash value immediately after the **loss**.

3.    **Company's Settlement Options**

When **you** have a covered **loss**, **we** have the option to pay for the **loss** or to repair or replace the damaged or destroyed property with property of like kind and quality. Before **we** have paid for the **loss** or replaced the property, **we** may return to **you** any recovered stolen property, at **our** expense, along with payment for any covered damage. At **our** option, **we** may keep all or part of the property at the agreed value or appraised value, but **you** shall not have the option of abandoning property to **us**.

4.    **Deductible**

Some covered **losses** are subject to deductible amounts shown on the Declarations Page or elsewhere in this policy. When **your loss** is the deductible amount or less, no payment is owed. When **your loss** is more than the deductible, **you** pay the deductible and **we** pay the rest of the **loss** up to the limit of liability for that type of property. The deductible may vary by coverage. Only one deductible will be applies to a covered **loss** from one **occurrence**. If the deductibles are not the same, the highest one will apply.

5.    **Change of Location**

If the **insured premises** is moved **you** must let **us** know within thirty days or no coverage will be provided under this policy.

6.    **Payment of Loss**

**We** will adjust any loss with **you** and the mortgagor. **We** will pay you to the extent of your interest in the property. **You** hereby direct that any benefits due which are in excess of **your** interest in the property be paid to the mortgagor. Payment for loss will be made within 60 days after **we** receive a proper proof of loss and

(a)    we reach an agreement with you; or

(b)    there is an entry of final judgment; or

(c)    there is a filing of a appraisal award with us.

7.    **Appraisals**

If **we** cannot agree with **you** on the amount of a **loss**, then **you** and **we** have the right to each select a competent and unbiased appraiser at any time after receipt of **your** proof of loss. The appraisers will judge the amount of **loss**. If the appraisers do not agree on the amount of **loss**, they shall select a third party umpire, and each will submit an appraisal of **loss** to the umpire.

Agreement between any two of the appraisers and/or umpire will be binding upon **you** and **us**. **You** pay the costs of **your** appraiser and **we** pay the costs of **ours**. **You** and **we** shall share equally in the umpire's expenses and all other appraisal expenses. If the appraisers fail to agree on an umpire within fifteen days, an umpire shall be selected by a judge of a court of record in the county in which the appraisal is pending.

8.    **Other Insurance**

Insurance under this section shall apply as excess insurance over other valid and collectible insurance which would apply in the absence of this policy.

9.    **Insurable Interest and Our Liability**

Even if more than one person has an insurable interest in the property covered, we shall not be liable:

(a)    for an amount greater than your and the mortgagor's interest in the property covered; or

(b)    for more than the Limit of Recovery that applies.

10.   **Automatic Reinstatement**

A **loss** to **your** property reduces **our** liability limit by the amount of the **loss** under the appropriate coverage. Upon repair or replacement of the property, the limit will return to the limit shown on the Declarations Page.

11.   **No Benefit to Bailee**

Regardless of any other provision of this policy, we will not honor an assignment nor extend coverage to a bailee. A bailee is a person or entity to whom you or the mortgagor have given possession of insured property.

12.   **Suit Against Us**

**You** may not bring suit against **us**, regarding this policy unless **you** have complied fully with all of its terms. Suit must be brought within one year after the **loss**; unless the period for bringing suit is extended to the minimum period permitted by applicable state law.

13.   **Your and Mortgagor's Duties After Loss**

In case of a **loss** to which this insurance may apply, **you** and the mortgagor shall see that the following duties are performed:

(a)   give **us** immediate written notice;

(b)   protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep an accurate record of repair expenditures. **If you** or the mortgagor fail to do so, **we** will not pay for any further damage. **We** will not reimburse for the costs or repairs unless records and receipts are provided;

(c)   make a list of all damaged or destroyed property showing in detail quantities, costs, actual cash value, amount of loss claimed and any other information we may require. Attach all bills, receipts, and related documents that substantiate the figures in the list;

(d)   send to **us** within 60 days after loss the above list and a proof of loss signed and sworn to by **you** and the mortgagor, including:

   1)   the time and cause of loss;

   2)   the interest of **you**, the mortgagor and all other in the property;

   3)   all encumbrances on the property;

   4)   other insurance which may cover the loss;

   5)   changes in title, use occupancy or possession of the property; and

   6)   if required, any plans and specifications of the damaged buildings.

(e)   exhibit the damaged property to **us** or **our** representative as often as may be required;

(f)   as often as **we** may require, submit to examinations under oath by any person named by **us** and sign the transcript of examinations;

(g)   produce for examination, with permission to copy, all records and documents that **we** may require;

(h)   in the event of a loss by theft, vandalism, or malicious mischief, report the occurrence to the police immediately.

14.   **Liberalization Clause**

If **we** adopt any revision which would broaden the coverage under this policy without additional premium during the policy period, the broadened coverage will immediately apply to this policy.

15.   **Policy Period**

This policy applies only to **loss** which occurs during the policy period. The policy period shall be as shown on the Declarations Page under "Policy Period" and for successive periods as stated below.

If **we** elect to continue this insurance, **we** will renew this policy **if you** pay the required renewal premium for each successive policy period, subject to **our** premiums, rules and forms then in effect. **You** must pay **us** prior to the end of the current policy term or lease this policy will expire.

If a **lienholder** is named in this policy, **we** will continue this insurance for the **lienholder's** interest for 30 days after written notice of termination to the **lienholder** and then this policy will terminate as to the **lienholder's** interest.

16.   **Nonrenewal**

If **we** elect not to renew this policy, **we** will provide written notice to **you**, at **your** address shown on the Declarations Page, at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

17.   **Concealment or Misrepresentation**

This entire Policy is void if **you** or the mortgagor has intentionally concealed or misrepresented any material fact or circumstance relating to any aspect of this insurance or acted fraudulently or make false statements relating to any aspect of this insurance, whether before or after a loss. Such acts or act by the mortgagor will bar recovery by any person except as provided in this Policy with respect to **your** interest.

18.   **Waiver or Change of Policy Provisions - Assignment**

A waiver or change of any provision of this policy must be authorized by **us** in writing in order to be valid. **Our** request for an appraisal or examination shall not waive any of **our** rights. Assignment of interest under this policy shall not bind **us** unless **we** give **our** written consent.

19.   **Cancellation**

(a)   **You** may cancel this policy at any time by returning it to **us** in writing of the future date cancellation is to take effect.

(b)   **We** may cancel this policy for the reasons stated in this Condition by notifying **you** in writing of the date cancellation takes effect. This cancellation notice may be delivered to **you** or mailed to **you** at **your** address shown on the Declarations Page or the last address known to **us** or **our** authorized agent. Proof of mailing shall be sufficient proof of notice:

i.    when **you** have not paid the premium, whether payable to **us** or to **our** agent, **we** may cancel at any time by notifying **you** at least 10 days before the date cancellation takes effect.

ii.   when this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason by notifying **our** at least 10 days before the date cancellation takes effect.

iii.  after this policy has been in effect for 60 days or more, or at any time if it is a renewal with **us**, **we** may cancel if there has been a material misrepresentation of fact which, if known to **us** not to issue the policy, or if the risk has changed substantially since the policy was issued, or for any other reason allowed by state law. This can be done by notifying **you** at least 30 days before the date cancellation takes effect.

(c)   If **your** policy is cancelled by **you** or **us**, **we** will return no more than the pro rated unearned share of **your** premium.

20.   **Subrogation - Our Right to Recover Payment**

**You** or the mortgagor may waive in writing before a loss all rights of recovery against any person. If not waived, **we** may require an assignment of rights of recovery for a loss to the extent that payment is made by **us**. If an assignment is sought, **you** and the mortgagor shall sign and deliver all related papers and cooperate with **us** in any reasonable manner.

21.   **Policy Conforms to Statute**

Any terms of this policy which are in conflict with the statutes of the state where issued are amended to conform to the statutes.

IN WITNESS WHEREOF, the American Modern Home Insurance Company has caused this policy to be signed by its President and Secretary, at Amelia, Ohio, and countersigned on the Declarations Page by a duly authorized representative of the Company.

President and CEO

Secretary



# GENERAL CHANGE ENDORSEMENT
## (To be attached to Master Policy)

This endorsement, effective __April 1, 2010__, forms a part of Master Policy No. ____BM-41-7057-5241__
issued to ___Community South Bank___ by the Company.

In consideration of the basis upon which this policy has been issued it is agreed between the named insured and the Company that the following will apply to the Master Policy.

### MANUFACTURED HOME AMENDED FORM
### STATED VALUE ENDORSEMENT

**When this endorsement is shown in the Declarations, the following provisions apply:**

The following is hereby added to **CONDITIONS – 1. Method of Settlement** under Form BMS MH (12/01):

> In the even of a total loss to the property, our payment for loss shall be the amount shown on the Declarations Page for manufactured home coverage

> "Total loss" is defined as a loss where the cost to repair the property plus any salvage value is greater than the amount shown on the Declarations Page for manufactured home coverage.

All other conditions of this policy remain unchanged.

BMS SV (05/03)                                                                                                    Page 1 of 1

# AMERICAN MODERN INSURANCE GROUP, INC.

American Modern Home Insurance Company
American Family Home Insurance Company
American Southern Home Insurance Company
American Western Home Insurance Company
American Modern Surplus Lines Insurance Company

## MORTGAGE SECURITY PROGRAM

### POLICYHOLDER DISCLOSURE
### NOTICE OF TERRORISM
### INSURANCE COVERAGE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2007, the definition of act of terrorism has changed.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury----in concurrence with the Secretary of State, and the Attorney General of the United States----to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is _____0.0%_____, and does not included any charges for the portion of losses covered by the United States government under the Act.

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT, MAY BE SUBJECT TO A $100 BILLION CAP THAT MAY REDUCE MY COVERAGE AND I HAVE BEEN NOTIFIED OF THE PORTION OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

_____
Policyholder/Applicant Signature

_____
Print Name

_____
Date

BMS TR (12/07)